Michael R. WOOD, individually, and dba National Photo Services, Plaintiff,

v.

SANTA BARBARA CHAMBER OF COMMERCE, INC. et al., Defendants.

Civ. No. LV 79–1 RDF.

United States District Court, D. Nevada.

Dec. 15, 1980.

Michael R. Wood, in pro. per.

Lionel, Sawyer & Collins by Grant Sawyer and Dennis L. Kennedy, Las Vegas, Nev., for Adams & Son, Inc.

Woodburn, Wedge, Blakey, Folsom & Jeppson by Casey W. Vlautin, Reno, Nev., for Donrey, Inc. d/b/a Las Vegas Review-Journal and Time, Inc. (Sports Illustrated-Western Edition).

Morrison & Foerster by Linda L. McCall, San Francisco, Cal., for Amphlett Printing Co.

Office of Gen. Counsel, Mobil Oil Corp. by Paul T. Gough, Los Angeles, Cal., for Mobil Oil Corp. and Ed Fulham.

Mariscal, Weeks, McIntyre & Friedlander, P.A. by Rudolph Mariscal and William L. Novotny, Phoenix, Ariz., for Phoenix Magazine.

Owen, Wickersham & Erickson by Melville Owen and Thomas M. Freiburger, San Francisco, Cal., for Lane Publishing Co. (Sunset Magazine).

Gust, Rosenfield, Divelbess & Henderson by James F. Henderson, Phoenix, Ariz., and Goodman, Oshins, Brown & Singer by Mark Segal, Las Vegas, Nev., for Phoenix Newspapers, Inc. (The Arizona Republic and The Phoenix Gazette).

Flint & McKay by Philip M. Battaglia, Stephen G. Contopulos and Frank Gooch, III, Los Angeles, Cal., for Hearst Corp. and The Advance-Star/Burlingame by Peninsula Newspaper, Inc., et al.

Spears, Lubersky, Campbell & Bledsoe by George L. Kirklin and Barrie J. Herbold, Portland, Or., for The Oregonian Publishing Co.

Dickerson, Miles & Pico by George M. Dickerson, Las Vegas, Nev., for Santa Barbara Chamber of Commerce, Inc., et al.

Caldecott, Peck, Phillips & Stewart by W. Michael Celestre, Oakland, Cal., for Oakland Tribune, Inc. and Eller Outdoor Advertising Co. of California, Inc.

Denton & Denton by Mark R. Denton, Las Vegas, Nev., for Western Banker Publishing, Inc.

J. L. O'Loughlin and B. F. Steubing by Bradley F. Steubing, Los Angeles, Cal., for Gulf Oil Corp. and Al A. Gioia.

McKay & Byrne by Michael A. Byrne, Los Angeles, Cal., for George Rusich d/b/a Triple "R" Press.

Angeline Burke, in pro. per.

Harold A. Donegan, Jr., Scottsdale, Ariz., for Insurance News, Inc.

Hunt & Hunt by John L. Grandsaert, San Francisco, Cal., for Brown Newspaper Publishing Co., Inc., sued herein as defendant Richmond Independent.

Elaine F. Fitz, Union Oil Co. of California, Los Angeles, Cal., for Fred Hartley, Jerry Luboviski and Union Oil Co. of California.

D. Joseph Burton, David G. Yetter, Los Angeles, Cal., for Texaco, Inc. and J. C. Kiersted.

Dickerson, Miles & Pico, Las Vegas, Nev. and Christie, Parker & Hale by C. Russell Hale and LeRoy T. Rahn, Pasadena, Cal., for The Times Mirror Co. et al.

Vargas, Bartlett & Dixon by Robert L. Gifford, Las Vegas, Nev. and McCutcheon, Black, Verleger & Shea by Philip K. Verleger, Sharon F. Rubalcava and James F. Vernon, Los Angeles, Cal., for Western Oil and Gas Assn. and Harry Morrison.

Johnson & Pilkington by George W. Johnson, Las Vegas, Nev., for Westways Magazine by Automobile Club of Southern California.

Breen, Young, Whitehead, Terzich & Belding, Chartered, by Jerry Carr Whitehead, Reno, Nev., for Salem Oregon Statesman et al.

Morton R. Galane, P.C. by Lynda S. Mabry, Las Vegas, Nev., for The Instructor Magazine et al.

Law Offices of Paul C. Parraguirre by Lorin D. Parraguirre, Las Vegas, Nev., for Motorland by California State Automobile Assn.

Gibson, Dunn & Crutcher by Theodore B. Olson and Rex S. Heinke, Los Angeles, Cal., for Los Angeles Magazine.

Arkin & Weissman by Andrew N. Weissman, Culver City, Cal., for Brentwood Publishing Corp.

Sally Ganong Pope, New York City, for Ziff-Davis Publishing Co.

Perry & Clay by Jack G. Perry, Las Vegas, Nev., for The Conde' Nast Publications, Inc.

Carl E. Eiberger, Eiberger, Stacy & Smith, Denver, Colo., for Denver Post, Inc.

## OPINION

ROGER D. FOLEY, District Judge.

### HISTORY OF THE CASE

On April 28, 1969, plaintiff, a California resident, delivered certain copyrighted photographs to defendant Chace Company Advertising, Inc., a California corporation. Those photographs were to be used for advertising purposes in connection with a "tourist emergency program" sponsored by the Santa Barbara Chamber of Commerce and various oil companies following the oil spill disaster of 1969. After a dispute developed between plaintiff and Chace, plaintiff rescinded his authorization for Chace to use the photographs. Plaintiff subsequently compelled Chace to return the photographs by legal action in state court.

Thereafter, on May 25, 1972, plaintiff filed a complaint against Chace Company Advertising, Inc., Thomas Chace and the Better Business Bureau of Santa Barbara alleging various violations of the copyright laws and antitrust laws of the United States. That action was brought in the United States District Court for the Central District of California. It was entitled *Michael R. Wood v. Chace Company Advertising, Inc.*, et al., Civil Action 72–1179 RJK. During the course of discovery in that action, and after the defendants obtained several protective orders prohibiting plaintiff from filing harassing and repetitive interrogatories, Judge Kelleher ordered that Willard W. McEwen, United States Magistrate, be appointed as a Special Master to supervise discovery in Santa Barbara, the residence of all parties involved. During the course of the discovery supervised by Magistrate McEwen, plaintiff continued his misconduct with respect to discovery.

After consideration of the Special Master's report, Judge Kelleher, after an extended order to show cause hearing, entered a judgment of dismissal with prejudice based upon his finding that plaintiff had failed to comply with the Federal Rules of Civil Procedure, local rules and various court orders relating to discovery. Plaintiff appealed that dismissal to the Ninth Circuit, but failed to observe the Rules of Appellate Procedure. On April 21, 1975, the Court of Appeals dismissed his appeal for lack of prosecution pursuant to Rule 12(c), FRApp.

Plaintiff then filed various motions and petitions with the Court of Appeals seeking a rehearing. All petitions and motions were denied on July 9, 1975.

After that denial, plaintiff sought certiorari to the Supreme Court and made an application for stay of mandate before the late William O. Douglas, Circuit Justice for the Ninth Judicial Circuit. The petition for a stay was denied and on November 3, 1975, the Supreme Court denied certiorari.

On August 29, 1977, plaintiff filed a new complaint in the United States District Court for the Central District of California.

That action sought to set aside the previous dismissal on the grounds of fraud upon the plaintiff and fraud upon the Court. It was entitled *Michael R. Wood v. Willard W. McEwen*, et al., Civil Action 77–1762–FW. By now the number of defendants increased to 16.

The substance of that second federal action was that the original defendants and their attorneys and insurance companies had conspired to hinder and delay plaintiff in his discovery process and had further conspired to have Magistrate McEwen appointed Special Master to supervise discovery without disclosing to the Court that McEwen was prejudiced. The alleged ground of prejudice was that McEwen was an officer of the Santa Barbara Chamber of Commerce. However, that entity had not been a party to the original federal action.

All the defendants in the second action filed motions to dismiss on the grounds that plaintiff was attempting a collateral attack on a final judgment based upon alleged intrinsic fraud. On December 22, 1977, Judge Whelan rendered a decision granting those motions subject to the Court filing a final judgment of dismissal.

However, before the Court was able to file its final judgment, plaintiff requested leave to file a second amended complaint which is almost identical to the complaint in this present action. Leave was denied to file that amended complaint, as well as to file a third amended complaint. Plaintiff then filed a motion for leave to file a fourth amended complaint.

Further, on November 11, 1978, plaintiff sought a writ of mandate in the Ninth Circuit Court of Appeals requesting that the Court of Appeals order Judge Whelan to allow plaintiff to file his proposed fourth amended complaint and to transfer the entire action to this court, the District of Nevada. Plaintiff's grounds for these requests were that Judge Whelan and all the other judges of the Central District of California were prejudiced against him and that he could receive a fair hearing only in some other district.

On February 22, 1979, after a hearing, Judge Whelan denied plaintiff's motion to disqualify him and all other Central District judges, denied plaintiff's motion to transfer the action to Nevada, denied plaintiff's leave to file a fourth amended complaint, and dismissed the action without leave to further amend.

On March 1, 1979, plaintiff made an emergency motion in the Ninth Circuit Court of Appeals requesting that the Court stay Judge Whelan's orders. On March 13, 1979, the Ninth Circuit denied plaintiff's writ of mandate and emergency motion and informed him that his rights lay in appeal. Plaintiff is now pursuing that appeal before the Ninth Circuit.

## THIS ACTION

This case is an attempt to import dubious California claims into Nevada. Plaintiff filed this action on January 2, 1979, against some two hundred defendants. The complaint contains 18 claims. Plaintiff has demanded a jury. The gist of the complaint may be summarized as follows. First, plaintiff alleges that the defendants or their agents used certain of his copyrighted photographs without his permission. Second, he alleges that the defendants or their agents, as part of an effort to conceal the purported copyright infringements, entered into a conspiracy to boycott plaintiff's business.

For convenience, the 18 claims may be divided into three separate parts:

(A) The copyright infringement action; Claims 1–11;

(B) The antitrust action; Claims 12–14; and

(C) The fraud and conspiracy action; Claims 15–18.

Presently there are before the Court 44 motions filed on behalf of some 120 named defendants, some address the complexity and redundancy of the complaint by motions to strike and motions for a more definite statement. Some are motions to dismiss, to quash service, to transfer, or for judgment on the pleadings. Essentially,

the same issues are involved in all of the latter motions. Those issues are lack of personal jurisdiction, improper venue, the running of the statute of limitations and res adjudicata.

After spending considerable time in analyzing the mass of papers filed in this action, this Court has concluded that most of the claims should be dismissed for lack of jurisdiction over the person. Because of plaintiff's tangled web of pleading by incorporation, the Court might have jurisdiction over certain defendants as to some of plaintiff's claims. As to these defendants, however, the complaint fails to state claims upon which relief can be granted and should be dismissed.

## DISMISSAL SUA SPONTE

This Court has concluded that the interests of justice would be best served by dismissal sua sponte of this entire action as to all defendants.

■■■ Since not all of the defendants who should have moved for dismissal on the appropriate grounds did so, the question may arise whether this Court can dismiss as to all of the defendants? Recent decisions have held that where circumstances warrant, dismissal of the whole complaint on the Court's own motion may be proper. See, e. g., *Robins v. Rarback*, 325 F.2d 929 (2nd Cir. 1963); *Clinton Community Hospital Corp. v. Southern Md. Medical Center*, 374 F.Supp. 450 (D.Md.1974), aff'd per curiam, 4 Cir., 510 F.2d 1037, cert. denied, 422 U.S. 1048, 95 S.Ct. 2666, 45 L.Ed.2d 700. Thus, when a court is confronted with an apparent absurdity, summary judgment sua sponte is appropriate. See, e. g., *Raitport v. Chemical Bank*, 74 F.R.D. 128 (S.D.N.Y. 1977); *Raitport v. Federation of Jewish Philanthropies of New York*, 76 Civ. 5001. (S.D.N.Y. Dec. 27, 1976), (as quoted in *Raitport v. Chemical Bank*, 74 F.R.D. at 130). The Ninth Circuit held in *Dodd v. Spokane County*, 393 F.2d 330 (9th Cir. 1968), that a district court may dismiss a complaint sua sponte if the proper procedural steps are taken and if the determination is correct on the merits. Proper procedure entails notice

to the plaintiff of the proposed action and affords him an opportunity to at least submit a written argument in opposition thereto.

This Court's order, infra, setting down certain questions for oral argument by the plaintiff, clearly notifies him that the Court is considering the validity of his entire complaint as to all defendants sua sponte. Plaintiff has filed voluminous "Points and Authorities" in opposition to the specific motions to dismiss. Furthermore, it should be noted that several of the defendants had asked in their motion papers for a dismissal of the complaint in its entirety. Plaintiff responded to those motions by written memorandum, as he responded to all 44 motions. *Dodd*'s procedural requirements are met.

## PART A: THE COPYRIGHT INFRINGEMENT ACTION, CLAIMS 1–11

Plaintiff seeks recovery in Claims 1–6 for alleged copyright infringement of his copyrighted photographs under Title 17 of the United States Code. Claims 1–6 are against various groups of defendants, as well as all of the defendants through plaintiff's web of pleading by incorporation in each claim. Claim 7, also brought under Title 17, alleges unfair competition arising out of the infringements alleged in Claims 1–6. Claim 8 is based on Title 17, and it alleges common law copyright infringement. In Claims 9–11 plaintiff seeks recovery under various California state laws for fraud arising out of the alleged acts of infringement in Claims 1–8. Only the federal causes of action in Claims 1–8 need be addressed at this time.

### (i) *STATUTE OF LIMITATIONS.*

■■ Photographs are entitled to copyright protection. *Burrow-Giles Lithographic Co. v. Sarony*, 111 U.S. 53, 4 S.Ct. 279, 28 L.Ed. 349 (1884). Plaintiff filed this action on January 2, 1979. The applicable statute of limitations regarding copyright infringement is 17 U.S.C. § 507. That statute provides that no civil action shall be maintained under the provisions of the copyright

act unless it is commenced within three years after the claim accrued. Thus, plaintiff may sue only for those alleged infringements occurring on or after January 2, 1976.

■ Once it is shown that a claim is time-barred by the applicable statute of limitations, it is the plaintiff's burden, if he is to avoid the bar, to demonstrate that for some equitable reason the statute should be tolled. *Prather v. Neva Paperbacks, Inc.*, 446 F.2d 338, 340 (5th Cir. 1971). Plaintiff argues that the statute should be tolled because of an alleged fraudulent concealment of all of the infringements by all of the defendants. He claims that he had no basis until 1977 to reasonably suspect infringements of any photograph other than the one photograph which had been the subject matter of his initial suit in 1972. He argues that this mere allegation gives rise to a genuine issue of material fact so as to guarantee him a jury trial under *Briskin v. Ernst & Ernst*, 589 F.2d 1363 (9th Cir. 1978). He is wrong.

■ Here there is no genuine issue of material fact as there was in *Briskin*. By his own admission, in paragraph VIII of his 1972 complaint in Civil Action No. 72–1179 RJK, plaintiff then had "information and belief that other reproductions [had] been made from other unselected copyrighted negatives."[1] Also, in a deposition on April 17, 1974, taken as part of the discovery in that action, plaintiff stated under oath, ". . . up until six months ago I did not know that my pictures had been used all

over the United States and I still hadn't been paid—and in Canada."[2] Furthermore, plaintiff's statement in his affidavit in opposition to summary judgment filed in this action that he "had no reason to believe any illegal use existed," refers to his actual knowledge as of the time he filed his first action in 1972.[3] That statement does not contradict his statement in the 1974 deposition that he knew of other possible infringements as of six months before April of 1974. Thus, by his own admissions, plaintiff knew, about November of 1973, that his copyrights were allegedly being infringed.

■ As a basis for tolling the statute of limitations, fraudulent concealment requires both successful concealment and fraudulent means. Once knowledge is acquired, *Crummer Co. v. DuPont*, 255 F.2d 425 (5th Cir. 1958), or once a party is merely put on notice, the statute begins to run. See *Prather v. Neva Paperbacks*, 446 F.2d at 341; *Japanese War Notes Claimants Association of Philippines, Inc. v. United States*, 373 F.2d 356, 359, 178 Ct.Cl. 630 (1967). As the Ninth Circuit has said, "if a prudent person would have become suspicious from the knowledge obtained through the initial prudent inquiry and would have investigated further, a plaintiff will be deemed to have knowledge of facts which would have been disclosed in a more extensive investigation." *Briskin v. Ernst & Ernst*, 589 F.2d at 1367. Thus, even assuming plaintiff did not actually know of other infringements by November of 1973, he is deemed as a matter of law to have had such

---

1. A copy of the 1972 complaint filed in Civil Action No. 72–1179 RJK in the Central District of California appears as Exhibit "A" of the Matters to be Judicially Noticed Pursuant to Federal Rules of Evidence 201, attached to the motion to dismiss filed by defendants Western Oil and Gas Association and Harry Morrison. That motion appears as Item 119 in Volume IV of the documents filed before this Court.

2. Pertinent parts of the April 17, 1974, deposition appear in the Affidavit of Hugh J. Haferkamp in Support of Motions to Dismiss and to Change Venue brought by Dickerson, Miles & Pico on behalf of certain of the defendants. Those motions appear as Item 124 in Volume V of the documents filed before this Court.

3. The Affidavit of Michael R. Wood in Opposition to Motion for Summary Judgment appears twice. First, it is attached to Plaintiff's Memorandum of Points and Authorities in Opposition to Motions to Dismiss and for Summary Judgment by Times Mirror Company and McClatchy Newspapers, filed June 29, 1979, as Item 203 in Volume VIII. Second, it is attached to Plaintiff's Memorandum of Points and Authorities in Opposition to Motions to Dismiss and for Transfer of Venue by Defendants Designated in Docket No. 124, filed June 29, 1979, as Item 204 in Volume VIII.

knowledge. Charging plaintiff with that knowledge is particularly appropriate in this case because it was plaintiff's own misconduct in his initial suit that prohibited discovery from being completed.[4]

Examination of all of the exhibits on file with this court reveals that only two defendants, Goleta Valley Chamber of Commerce and The Times-Weekend of San Mateo, allegedly infringed plaintiff's copyrights within the statutory time period. Plaintiff alleges that The Times-Weekend of San Mateo ran an advertisement in 1976 which purportedly violated his copyright in one photograph. He also alleges that Goleta Valley Chamber of Commerce violated two of his copyrights in its 1978 brochure. As to all other defendants, 17 U.S.C. § 507 has run. Therefore, this Court should dismiss sua sponte Claims 1–8 as to all named defendants except Goleta Valley Chamber of Commerce and The Times-Weekend of San Mateo, pursuant to Rule 12(b)(6), FRCP, for failure to state a claim upon which relief can be granted, in that the statute of limitations ran before plaintiff filed this action.

### (ii) *PERSONAL JURISDICTION.*

Both the Goleta Valley Chamber of Commerce and The Times-Weekend of San Mateo have moved this Court to dismiss Claims 1–8 against them pursuant to Rule 12(b)(2), FRCP, for lack of jurisdiction over the person.

■ The burden of alleging and proving the existence of a factual basis for the exercise of personal jurisdiction, once it has been placed in controversy, rests with the plaintiff. See *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483, 490–91 (5th Cir. 1974). If a trial court questions whether jurisdiction is properly invoked, it may search out the real, ultimate facts alleged. See generally, *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 56 S.Ct. 780,

80 L.Ed. 1135 (1936); *Amba Marketing Systems, Inc. v. Jobar International, Inc.*, 551 F.2d 784 (9th Cir. 1977). Also, if there is no conflict in the opposing affidavits concerning any material fact affecting jurisdiction, then the uncontradicted facts may be deemed established and determinative of jurisdiction. See *Data Disc, Inc. v. Systems Technology Associates, Inc.*, 557 F.2d 1280, 1284–86 (9th Cir. 1977).

■ To determine if a court has personal jurisdiction over a nonresident of the forum state, two issues must be addressed: (1) whether an applicable statute appears to confer personal jurisdiction, and (2) whether assertion of such jurisdiction satisfies federal constitutional principles of due process. As to the first inquiry, under Rule 4, FRCP, this Court turns to the Nevada jurisdictional statutes. *Amba Marketing Systems, Inc. v. Jobar International Inc.*, 551 F.2d 784 (9th Cir. 1977). See also *Sterling Television Presentations v. Shintron Co.*, 454 F.Supp. 183 (S.D.N.Y.1978), which held that a court's exercise of personal jurisdiction over nonresidents alleged to have infringed a federal copyright must be affirmatively authorized by the forum state. Because Nevada Revised Statutes § 14.065, the Nevada long-arm statute, "clearly contemplates that only causes of action 'arising from' enumerated 'acts' which took place within Nevada may be reached," *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 417 (9th Cir. 1977), this Court is satisfied that none of plaintiff's theories of personal jurisdiction meet the necessary statutory basis. However, assuming plaintiff's tenuous theories for personal jurisdiction somehow satisfy the Nevada jurisdictional statutes, this Court would still lack personal jurisdiction unless the exercise of such jurisdiction would accord with federal due process requirements.

■ Whether or not a court may exercise personal jurisdiction over nonresi-

---

4. A copy of the Memorandum of Decision and Order Dismissing Action in Civil No. 72–1179 RJK, is Exhibit "B" attached to the motions to dismiss on behalf of defendants Western Oil and Gas Association and Harry Morrison. Those motions appear as Item 119 in Volume IV of the documents filed before this Court. As shown in that memorandum, it was not until plaintiff substituted himself, in propria persona, as attorney of record that difficulties in discovery were brought to the attention of that Court.

dents is measured by the standards elucidated in *International Shoe v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In order for the exercise of jurisdiction to satisfy due process, there must be minimum contacts between the defendant, the forum and the litigation. *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977). The defendant's conduct and connection with the forum must be such that he should reasonably anticipate being hauled into court there. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980). These jurisdictional requirements of minimum contacts apply to copyright actions brought against nonresident defendants. See *Graciette v. Star Guidance, Inc.*, 66 F.R.D. 424 (S.D.N.Y.1975).

 The facts relevant to the exercise of personal jurisdiction by this Court are uncontested. The affidavit of J. Hart Clinton, President of Amphlett Printing Co. which publishes The Times Weekend of San Mateo, establishes that the only contact the paper has with Nevada is the solicitation through an independent contractor of less than 14/100's of 1% of total advertising revenue.[5] The Goleta Valley Chamber of Commerce is a nonprofit California corporation. The affidavit of Patricia A. Jones, President of the Goleta Valley Chamber of Commerce, establishes that the only contact the Goleta Valley Chamber of Commerce has with Nevada is the incidental sending of printed advertisements into the state.[6]

 Obtaining financial benefits from the forum state will not by itself support jurisdiction. Instead, those benefits must stem from a constitutionally cognizable contact with that state. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. at 299, 100 S.Ct. at 568, 62 L.Ed.2d at 502. The mere circulation of copies of printed matter within a state and the solicitation of a minute percentage of total revenue from residents are insufficient contacts with that state to allow the exercise of personal jurisdiction. See, e. g., *Church of Scientology of California v. Adams*, 584 F.2d 893 (9th Cir. 1978); *New York Times Co. v. Connor*, 365 F.2d 567 (5th Cir. 1966); *Buckley v. New York Times Co.*, 338 F.2d 470 (5th Cir. 1964). Even in his own affidavits, plaintiff fails to contradict the jurisdictional facts established by the Clinton and Jones affidavits. For that matter, he does not contradict the jurisdictional facts set forth in any of the nonresidents' affidavits. Instead, plaintiff merely sets forth his theories for personal jurisdiction. Those theories are a conglomeration of tort, conspiracy and agency which plaintiff believes create sufficient minimum contacts. His theories may be summarized as follows. Because defendant Chace Company Advertising, Inc., arranged the advertising campaign to revitalize Santa Barbara tourism with other nonresident defendants, an agency relationship arose among all 200-plus defendants. Since Chace's California articles of incorporation authorize it to do business world-wide, plaintiff argues that all the nonresident defendants are "present" in Nevada through that article of Chace's incorporation. Plaintiff also alleges that because Chace itself solicited business with at least one Nevada resident, the Las Vegas Review-Journal, all the nonresident defendants derived benefits from Nevada since they, in turn, did business with Chace. Finally, plaintiff asserts that because of an alleged conspiracy centered in California, all the nonresidents have somehow committed tortious injury within Nevada.

 The requirement of reasonableness permeates any exercise of personal jurisdiction over nonresidents of the forum, and the reasonableness of an exercise of such jurisdiction may be tested under standards analogous to those of forum non con-

---

5. This affidavit appears as Exhibit "A" of the Motion to Dismiss for Lack of Personal Jurisdiction, filed on March 28, 1979, on behalf of defendants represented by Flint & MacKay. That motion is Item 122 in Volume IV of the documents filed before this Court.

6. This affidavit is attached to the Motion to Quash Service or to Dismiss, filed on March 28, 1979, on behalf of defendants represented by Dickerson, Miles & Pico. That motion is Item 124 in Volume V of the documents filed before this Court.

veniens. *L. D. Reeder Contractors of Ariz. v. Higgins Industries, Inc.*, 265 F.2d 768, 775–76 (9th Cir. 1959). In *Gulf Oil Corporation v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the Supreme Court described some of the factors to be weighed under the forum non conveniens doctrine. Summarized, those factors are all the practical problems that make trial of a case easy, expeditious and inexpensive. Although a plaintiff's choice of forum is entitled to consideration, it is not a controlling factor. As the Supreme Court said in *Gulf Oil*, a plaintiff may not, by his choice of forum, inflict upon the defendant expense or trouble not necessary to the plaintiff's own right to pursue his remedy.

█ All that happened in Nevada in this case with respect to any of the nonresident defendants was the circulation of insignificant numbers of out-of-state papers within the state. The sources of proof as to the alleged infringements by all the nonresident defendants are located outside Nevada, primarily in California. So, too, virtually all of the potential witnesses are located in California. In addition, substantial California state law claims are included in the complaint.

The Ninth Circuit has said that, although personal jurisdiction determinations should not be based solely on the plaintiff's ability to sue elsewhere, it is a relevant factor if the plaintiff can pursue his claims in a forum where the defendants have genuine and substantial ties to the litigation. See *Amba Marketing Systems, Inc.*, 551 F.2d at 789–90. The history of this case shows that plaintiff has been pursuing the enforcement of his copyrights in California. During the course of his second federal suit, Civil Action No. 77–1762–FW, plaintiff sought to have that action transferred to this district. The ground asserted for such a transfer was that plaintiff claimed he could not get a fair trial in the Central District of California.[7] He based that allegation upon the failure of all of the Central District judges to disqualify themselves from hearing his action.[8] That motion to transfer was denied for lack of good cause shown.[9] Plaintiff's filing the present action against all of the nonresidents in this district is forum-shopping.

Consideration of all these factors leads this Court to conclude that the exercise of personal jurisdiction against the Goleta Valley Chamber of Commerce and The Times-Weekend of San Mateo, as well as all the other nonresident defendants, would be unreasonable and therefore invalid.[10] This Court need not harp upon the "slim thread of facts which connect [all the nonresident defendants] with the forum state which [plaintiff] has chosen." *L. D. Reeder Contractors of Arizona*, 265 F.2d at 776. There simply is no good reason why any of the nonresident defendants should be required

7. A copy of the pertinent part of plaintiff's motion to transfer his second California action to this district appears as Exhibit "J" to the Supplemental Affidavit of Monte L. Widders in Support of Motions for Summary Judgment and to Dismiss, which is itself attached to the Motion to Quash Return of Service of Summons or, in the Alternative, Motion to Dismiss or, in the Alternative, Motion for Transfer of Venue, filed March 28, 1979. This motion is Item 124 in Volume V of the documents filed before this Court.

8. A copy of the Order Denying Motion of Plaintiff to Disqualify the Undersigned Trial Judge as well as the Other Judges of the United States District Court for the Central District of California, appears as Exhibit "E" to the Supplemental Affidavit of Monte L. Widders. See note 7, supra.

9. A copy of the Order Denying Motion to Transfer Action to Another District Court appears as Exhibit "F" to the Supplemental Affidavit of Monte L. Widders. See note 7, supra.

10. In addition to the Las Vegas Review-Journal, there are two other Nevada corporations against whom this Court could assert personal jurisdiction under Claims 1–8. Those corporations are the Chronicle Publishing Company and the San Francisco Newspaper Printing Company, Inc. Their affidavits are attached to the Motion to Dismiss for Lack of Jurisdiction over the Person and for Improper Venue, filed on March 28, 1979, on behalf of the defendants represented by Flint & MacKay. That motion appears as Item 122 in Volume IV of the documents filed before this Court. However, the statute of limitations for copyright infringement has expired as against all three Nevada defendants.

to incur the additional costs and effort that litigation of Claims 1–8 in this district would require of them.

Therefore, the motions by the Goleta Valley Chamber of Commerce and The Times-Weekend of San Mateo to dismiss Claims 1–8 pursuant to Rule 12(b)(2), FRCP, for lack of personal jurisdiction should be granted.

### (iii) REFUSAL TO TRANSFER.

█ As noted, when plaintiff filed this action on January 2, 1979, the statute of limitations had not run as against The Times-Weekend of San Mateo for its alleged infringement in 1976, and the Goleta Valley Chamber of Commerce for its alleged infringements in 1978. Dismissal for lack of personal jurisdiction at this time could mean that plaintiff's claim against these defendants would become time-barred. Thus, the issue arises whether this Court should act so as to preserve that claim.

*Title 28, U.S.C., § 1406(a),* Cure or waiver of defects, reads as follows:

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."

Although this is a venue statute, the United States Supreme Court has held that it authorizes the transfer of cases even where the court lacks personal jurisdiction over the defendants. *Goldlawr v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962). However, the reason for allowing a transfer when the transferor court lacks personal jurisdiction is to avoid injustice in those cases in which plaintiffs would otherwise have their suits dismissed merely because they had made an erroneous guess as to the existence of facts necessary to support proper venue. *Goldlawr,* 369 U.S. at 466, 82 S.Ct. at 915.

The history of this case clearly demonstrates that the plaintiff, in bringing this action in this district, is guilty of blatant forum-shopping.[11] Plaintiff knew where The Times-Weekend of San Mateo and the Goleta Valley Chamber of Commerce should have been sued, and there was no good reason for him not to sue them in California. Thus, the reason for the rule allowing transfer without personal jurisdiction is not present in this case. In this situation, the interests of justice do not require this Court to transfer Claims 1–8 as to The Times-Weekend and the Goleta Valley Chamber of Commerce to the Central District of California. Plaintiff assumed the risk of such a result when he deliberately chose not to sue in the proper forum. Therefore, this Court declines to exercise its discretion to transfer any part of Claims 1–8 back to the Central District of California.

### (iv) CLAIMS 9–11.

Since this Court is prepared to dismiss sua sponte Claims 1–8 in their entirety as to all named defendants pursuant to Rules 12(b)(2) and (6), FRCP, the pendent Claims 9–11 should be dismissed sua sponte for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), FRCP.

## PART B: THE ANTITRUST ACTION, CLAIMS 12–14

In Claim 12 of his complaint, plaintiff alleges that he was the object of a boycott letter in violation of the antitrust laws. He seeks recovery under 15 U.S.C. §§ 15 and 26 for treble damages and an injunction against the alleged continuing circulation of that letter. Claims 13 and 14 are pendent California state law claims which need not be discussed at this time.

### (i) STATUTE OF LIMITATIONS.

The defense of the statute of limitations has again been raised. As previously mentioned, this action was filed on January 2, 1979. The applicable statute of limitations for the alleged antitrust violation is 15 U.S.C. § 15(b). That statute provides that such an action "shall be forever barred unless commenced within four years after the cause of action accrued." Therefore, plaintiff may reach only those violations which

---

11. See notes 7–9 and accompanying text, supra.

allegedly occurred since January 2, 1975. Because plaintiff brought suit on the identical letter in *Michael R. Wood v. Chace Company Advertising, Inc.*, et al., Civil Action 72–1179 RJK, any argument that fraudulent concealment kept this statute of limitations from running is wholly frivolous and without merit. However, because plaintiff has alleged a continuing violation of the antitrust laws since July of 1974, running of the statute of limitations does not dispose of his entire cause of action under Claim 12.

## MOTION TO DISMISS FOR LACK OF JURISDICTION OVER THE PERSON

In paragraph 104 of his complaint, plaintiff alleges that commencing in July of 1974, and continuing to the time of suit, certain named defendants publicly stated their intent to abide by a purported boycott letter written in 1969.[12] Those defendants are California residents or California corporations. None of them are residents of Nevada. Each of the defendants specifically named in paragraph 104 of Claim 12 has moved this Court to quash return of service of process or, in the alternative, to dismiss for lack of personal jurisdiction.[13]

Plaintiff seeks recovery under 15 U.S.C. §§ 15 and 26. Section 15 reads:

"Any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws may sue therefor in any district court of the United States in the district in which the defendant resides or is found or has an agent, without respect to the amount in controversy, and shall recover threefold the damages by him sustained, and the cost of suit, including a reasonable attorney's fee."

Section 26 provides for injunctive relief in any court of the United States having jurisdiction over the parties for any violation of the antitrust laws. Although plaintiff did not plead it, 15 U.S.C. § 22 is a special statute applicable to antitrust actions against corporations. That section will be dealt with later, but first it is necessary to show why this Court should dismiss Claim 12 for lack of personal jurisdiction over the defendants named in paragraph 104 of Claim 12, both individuals and noncorporate business entities.

(ii) *PERSONAL JURISDICTION*—Individuals and Noncorporate Business Entities Specifically Named in Paragraph 104 of Claim 12.

■ Section 15 of Title 15 is a special venue statute, the purpose of which was to remove existing limitations on venue in diversity cases. *Freeman v. Bee Machine Co.*, 319 U.S. 448, 63 S.Ct. 1146, 87 L.Ed. 1509 (1943), reh. denied, 320 U.S. 809, 64 S.Ct. 27, 88 L.Ed. 489. While it authorizes venue in any district where the defendant resides, is found or has an agent, it does not authorize service in a district other than that in which the suit is brought. See, e. g., *Orange Theatre Corp. v. Rayherstz Amusement Corp.*, 139 F.2d 871 (3rd Cir. 1944), cert. denied, 322 U.S. 740, 64 S.Ct. 1057, 88 L.Ed. 1573. In order to obtain extraterritorial service, a federal court considers the forum state's long-arm statute pursuant to Rule 4, FRCP. *Black v. Acme Markets, Inc.*, 564 F.2d 681 (5th Cir. 1977). To be valid, such extraterritorial service must comply with both the state statutory requirements and federal due process. If the extraterritorial service is defective, the federal court lacks personal jurisdiction over any defendants so served. *Athletes Foot of Delaware, Inc. v. Ralph Libonati Co., Inc.*, 445 F.Supp. 35 (D.C.Del.1977).

■ As previously shown, the Nevada long-arm statute reaches only causes of action arising from enumerated "acts" which

---

12. A copy of the purported 1969 boycott letter appears as Exhibit "O" to plaintiff's complaint, which comprises all of Volume I of the documents filed before this Court.

13. See the Motion to Quash Return of Service of Summons or, in the Alternative, Motion to Dismiss or, in the Alternative, Motion for Transfer of Venue, filed March 28, 1979, on behalf of the defendants represented by Dickerson, Miles & Pico. That motion appears as Item 124 in Volume V of the documents filed before this Court.

take place within Nevada. See, e. g., *Wells Fargo & Co. v. Wells Fargo Express Co.,* 556 F.2d at 417. In none of the papers filed before this Court has plaintiff alleged that anything happened in Nevada with regard to Claim 12 that satisfies that statutory requirement. The purported reissuance of the alleged boycott letter might have been a tort against plaintiff's economic interests, but the act of reissuance is alleged to have occurred in California, not Nevada. There simply was no act within Nevada out of which Claim 12 could have arisen, as NRS § 14.065 requires.

Also, the affidavits of all the defendants specifically named in paragraph 104 of Claim 12 establish that there were insufficient contacts between those defendants, Claim 12 and Nevada to permit this Court to exercise personal jurisdiction over them.[14] Again, instead of contradicting the facts in those affidavits, plaintiff merely sets forth the same theories for personal jurisdiction he asserted in Claims 1–8. Those theories are even less persuasive here because absolutely nothing occurred in Nevada relative to Claim 12. Furthermore, everything said above concerning the unreasonableness of requiring any of the nonresident defendants to defend the copyright action in this court is equally applicable to the unreasonableness of requiring any of the nonresident defendants to defend Claim 12 here. Therefore, all the motions of the noncorporate defendants named in paragraph 104 of Claim 12 to dismiss, pursuant to Rule 12(b)(2), FRCP, for lack of personal jurisdiction should be granted.

(iii) *PERSONAL JURISDICTION*—All Nonresident Corporate Defendants Specifically Named in Paragraph 104 of Claim 12.

As mentioned above, 15 U.S.C. § 22 applies to the corporations against which Claim 12 is asserted. Even though plaintiff failed to plead that statute, this Court feels it should discuss its application to this action. Section 22 reads as follows:

"Any suit, action, or proceeding under the anti-trust laws against a corporation may be brought not only in the judicial district whereof it is an inhabitant, but also in any district wherein it may be found or transacts business; and all process in such cases may be served in the district of which it is an inhabitant, or wherever it may be found."

The purposes of § 22 are twofold: (1) to fix venue for antitrust suits against corporations, and (2) to determine where process in such suits may be served. *United States v. Scophony Corp. of America,* 333 U.S. 795, 68 S.Ct. 855, 92 L.Ed. 1091 (1948). By its terms, § 22 authorizes extraterritorial service of process wherever a corporate defendant may be found. *Eastman Kodak Co. v. Southern Photo Materials,* 273 U.S. 359, 47 S.Ct. 400, 71 L.Ed. 684 (1927).

Section 22 seeks to prevent a corporation from entering a district, transacting business to a plaintiff's injury within that district, and then retreating to its distant home district so that the injured plaintiff must chase after it. See, e. g., *Eastland Construction Co. v. Keasbey & Mattison Co.,* 358 F.2d 777 (9th Cir. 1966); *Green v. U. S. Chewing Gum Mfg. Co.,* 224 F.2d 369 (5th Cir. 1955). Thus, although § 22 expands the reach of the federal courts beyond the previous bounds of § 15, there still must be at least some injury to the plaintiff within the district in which he brings his action in order to satisfy the purpose of § 22. See generally, *Grappone, Inc. v. Subaru of America, Inc.,* 403 F.Supp. 123, 134 (D.N.H.1975). This purpose behind § 22 is not satisfied in this case because plaintiff could not have been injured in Nevada by the alleged boycott of his business in California by other California residents.

Extraterritorial service pursuant to § 22 can be valid only if venue is proper in the district where the suit is filed. See, e. g., *Smokey's of Tulsa, Inc. v. American Honda Motor Co.,* 453 F.Supp. 1265 (E.D. Okl.1978); *Friends of Animals, Inc. v. American Veterinary Medical Association,* 310 F.Supp. 620 (S.D.N.Y.1970). Thus, the

---

14. See the pertinent affidavits attached to the motion identified in note 13, supra.

validity of this Court's exercise of personal jurisdiction over these nonresident corporations under Claim 12 can be determined depending upon whether or not venue is proper in this district.

The term "found" within the meaning of § 22 is equated with "residing" or "present" and means doing business to a substantial extent, or in such manner and to such extent as to establish actual presence. Annot., *Construction and Effect of Venue Provisions of § 12 of Clayton Act* (15 U.S.C. § 22), 3 ALR Fed. 120, § 14. The term "transacts business" as used in § 22 requires something less than the doing of business necessary for a corporation to be "found." However, those activities must be "substantial" by a practical business standard, taking into account the totality of circumstances. Id., § 4. Thus, if any of these nonresident corporate defendants are "found" within Nevada, then they also "transact business" within the state even though there may be some defendants which "transact business" without being "found" in Nevada. Therefore, this Court only needs to determine if any of these nonresident corporate defendants satisfy the lesser "transact business" test.

This circuit dealt with that test in *Pacific Car and Foundry Company v. Pence*, 403 F.2d 949 (9th Cir. 1968), which had a factual setting very similar to the case at bar. In *Pacific Car*, an Australian corporation sued a Washington state corporation in the Hawaii District Court for an alleged conspiracy against it in violation of the Clayton Act. The plaintiff had sued in Hawaii because that was the closest federal judicial district to Australia. The Ninth Circuit began its analysis of why a motion for change of venue should have been granted by noting that the purpose behind the broad reach of § 22 is to allow a plaintiff, who has been hurt in his dealings with the defendant, to bring suit where the defendant had committed violations of the Act and inflicted the forbidden injuries. This policy was balanced against Congress' unwillingness to extend a plaintiff's right to choose a forum beyond reasonable limits.

In deciding the weight that should be given to a plaintiff's choice of forum, the Ninth Circuit said:

"Plaintiff's choice of forum, then, is not the final word. In judging the weight to be given such a choice, as is the case with other types of actions, consideration must be given to the extent both of the defendant's business contacts with the chosen forum and of the plaintiff's contacts, including those relating to his cause of action. If the operative facts have not occurred within the forum of original selection and that forum has no particular interest in the parties or the subject matter, the plaintiff's choice is entitled only to minimal consideration."

*Pacific Car*, 403 F.2d at 954 (footnotes omitted).

Acknowledging that a bare case of "transacting business" by the Washington corporation might have been found in Hawaii, the Court then took note that any such business was not transacted with the plaintiff. The Court said, "[Plaintiff's] claim of injury had nothing to do with Hawaii. If injury was suffered it was in Australia." *Pacific Car*, 403 F.2d at 955. The plaintiff had emphasized that Hawaii was the closest federal judicial district to Australia. However, the Court felt that fact was meaningless in the absence of some showing that it therefore served the interests of plaintiff's convenience. Thus, the choice of Hawaii was supported only by the fact that it was chosen. Apparently, because the plaintiff had sued in Hawaii in the reasonable belief that venue was proper there, the Ninth Circuit issued the mandate allowing a change of venue instead of dismissing for improper venue.

In the case at bar, it is possible that some of these nonresident corporate defendants satisfy the bare "transacting business" requirement. But, while only one act may be enough to fulfill the venue requirements of § 22, in each case it is the totality of all of the facts which determines whether venue is proper. *Courtesy Chevrolet, Inc. v. Tennessee Walking Horse Ass'n*, 344 F.2d 860, 865 (9th Cir. 1965). As in *Pacific Car*,

plaintiff's alleged injury in Claim 12 had nothing to do with Nevada. No purpose behind the antitrust laws would be met by allowing plaintiff to import his California action into this district. There simply is no good reason why any of these nonresident defendants should be required to incur the additional costs and inconvenience that defense of Claim 12 in this district would require of them.

For all of these reasons, venue pursuant to § 22 is improper in this district as against these nonresident corporate defendants. Since venue is improper, the extraterritorial service on them was defective. Therefore, this Court lacks personal jurisdiction over all these nonresident corporate defendants and all of their Rule 12(b)(2), FRCP, motions to dismiss should be granted.

#### (iv) *OTHER CORPORATE DEFENDANTS.*

The Court notes in passing that what has been said above applies as well to all other nonresident corporate defendants specifically named in Claim 12 and through incorporation by reference, to even those national corporations that appear to satisfy the bare "transacting business" test of § 22.[15]

#### (v) *REFUSAL TO TRANSFER.*

As previously discussed in part A(iii) above, the Supreme Court's decision in *Goldlawr v. Heiman,* 369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962), would allow this Court to transfer Claim 12 back to the Central District of California as to those defendants whose Rule 12(b)(2) motions should be granted in Parts B(ii) and (iii). However, this Court declines to exercise its discretion to transfer any part of Claim 12 for the same reasons set forth in Part A(iii).

#### (vi) *NONJOINDER OF INDISPENSABLE PARTIES.*

In Claim 12, through his tenuous web of pleading, plaintiff did incorporate by reference all other defendants in the case. Hence, the Court must deal with them and will do so by dismissing them upon the grounds of nonjoinder of indispensable parties.

 Rule 19, FRCP, requires a two-step inquiry: (1) is the party one who should be "joined if feasible," within the terms of paragraph (a) of the Rule, and (2) if he is but he cannot be made a party, should the action "in equity and good conscience" be dismissed pursuant to the terms of paragraph (b)? In making these determinations, the Court is to look into the actual practical effects a judgment may have upon the absent parties and those who are present as parties. *Occidental Petroleum Corp. v. Buttes Gas & Oil Co.,* 331 F.Supp. 92, 104–05 (C.D.Cal.1971), aff'd 461 F.2d 1261 (9th Cir. 1972), cert. denied, 409 U.S. 950. A court may make an inquiry under Rule 19 sua sponte. Wright & Miller, *Federal Practice and Procedure*: Civil § 1609, p. 89 (1972), and cases cited therein.

 There can be no doubt that those defendants specifically named in paragraph 104 of Claim 12 whose Rule 12(b)(2), FRCP, motions to dismiss should be granted in Parts B(ii) and (iii) above, are parties who should be joined if feasible under paragraph (a) of Rule 19, FRCP. After all, plaintiff alleges that they are the defendants who initially wrote the boycott letter in 1969 and reissued it in 1974. He claims that they publicly stated their intent to abide by that letter and circulated it among all the other defendants. As shown in Parts B(ii) and (iii), those defendants cannot be made parties to this action because this Court lacks personal jurisdiction over them. Thus, the issue now is whether or not Claim 12 should be dismissed as against all the remaining defendants incorporated by reference pursuant to paragraph (b) of Rule 19, FRCP.

The "equity and good conscience" test of Rule 19(b), FRCP, requires an evaluation of all the relevant considerations presented by the case, particularly those enumerated in

---

**15.** The national corporations which are sued in this action include the Aetna Casualty & Surety Company, sued as Aetna Life & Casualty, Inc.; Gulf Oil Corporation; Hartford Accident & Indemnity Company; Mobil Oil Corporation; Texaco, Inc.; Union Oil Company of California, sued as Union Oil of California; and Western Oil & Gas Association.

the rule itself. Wright & Miller, Civil § 1607. If Claim 12 was to proceed against just the remaining defendants, it seems obvious that any judgment in plaintiff's favor would necessarily be prejudicial to the absent defendants. This Court sees no way in which that prejudice could be lessened or avoided. More importantly, since the absent defendants have control of the letter itself, any judgment rendered for plaintiff in their absence could not adequately protect plaintiff's interests. He would have to bring another action in a court with jurisdiction over those defendants. Finally, if Claim 12 is dismissed for nonjoinder, plaintiff would still have an adequate remedy available since he has alleged a continuing violation of the Clayton Act.

Therefore, in light of all the relevant considerations presented by this case, this Court should dismiss sua sponte Claim 12 pursuant to Rule 19(b) for nonjoinder of indispensable parties, as to all the remaining defendants.

### (vii) *CLAIMS 13 AND 14.*

Plaintiff's pendent Claims 13 and 14 are brought under California state antitrust statutes. Since Claim 12 should be dismissed in its entirety, plaintiff's Claims 13 and 14 should be dismissed sua sponte pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

### PART C: THE FRAUD AND CONSPIRACY ACTION, CLAIMS 15–18

#### (i) *CLAIMS 15 AND 16.*

In Claims 15 and 16, plaintiff urges his allegations of fraud on the Court based upon the Special Master's purported hidden conflict of interest and unlawful official misconduct by the Special Master and others. Those allegations are the same claims that were the basis of his second action in the Central District of California in *Michael R. Wood v. Willard W. McEwen, et al.*, Civil Action No. 77–1762–FW. Plaintiff argues that the prior action is not entitled to res judicata effect because he never was allowed to argue the merits of those claims at trial.

 The judicial doctrine of res judicata makes a final, valid judgment conclusive on the parties, and those in privity with them, as to all matters, fact and law, that were or should have been adjudicated in the prior proceeding. 1B Moore's, *Federal Practice*, 2d Ed., p. 624 (1974). It is well settled under the Federal Rules that a judgment dismissing a complaint for failure to state a claim upon which relief can be granted and without the reservation of any issue, is presumed to be upon the merits unless a contrary intent appears of record or is stated in the decree. 1B Moore's at 1005.

 Plaintiff's second California action, Civil Action No. 77–1762–FW, was dismissed without leave to further amend after four unsuccessful attempts by plaintiff to state a claim upon which relief could be granted.[16] The judgment dismissing the action in that case did not reserve any issue,[17] nor did any intent that the dismissal not be upon the merits appear in that judgment or in its accompanying memorandum of decision.[18] Therefore, that dismissal is entitled to res judicata effect by this Court.

 Plaintiff's argument that the pendency of his appeal of that dismissal suspends the applicability of res judicata is contrary to the federal rule. 1B Moore's at 2252. Thus, Claims 15 and 16 in this action are barred by res judicata. Therefore, those claims should be dismissed sua sponte as to all named defendants pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

---

16. A copy of the Order Denying Motion for Leave to File 4th Amended Complaint appears as Exhibit "C" to the Motion to Dismiss, filed before this Court on March 28, 1979, in behalf of defendants Western Oil & Gas and Harry Morrison. That motion is Item 119 in Volume IV of the documents filed before this Court.

17. A copy of the Judgment Dismissing Action No. CV 77–1762–FW appears as Exhibit "E" to the motion described in note 16, supra.

18. A copy of the Memorandum of Decision appears as Exhibit "D" to the motion described in note 16, supra.

### (ii) *CLAIMS 17 AND 18.*

In Claims 17 and 18, plaintiff seeks recovery under various California state statutes for alleged fraud and conspiracy to publish libel arising out of a letter written to Judge Whelan and Judge Kelleher of the Central District of California by counsel for one of the defendants in plaintiff's second federal action in California.[19] Plaintiff asks this Court to exercise pendent jurisdiction over those two claims. However, since all the other claims of plaintiff in this action should be dismissed, there is no pendent jurisdiction over Claims 17 and 18.

Therefore, Claims 17 and 18 should be dismissed sua sponte pursuant to Rule 12(b)(1), FRCP, for lack of subject matter jurisdiction.

### REFUSAL TO ENTER ANY DEFAULT JUDGMENTS

After this Court took the entire cause of action under consideration, plaintiff filed seven separate motions for entry of default judgment pursuant to Rule 55(b)(2), FRCP.[20] The seven defendants plaintiff has moved against are: San Diego Magazine, Holiday Magazine, Advertising Age, Successful Farming, Venture Magazine-Traveler's World, World Convention Dates, and American Society of Association Executives. Plaintiff argues that because those defendants failed to respond to his complaint, they have waived all defenses. Thus, he seeks an entry of default judgment granting him maximum statutory recovery against each of them.

▆▆ However, before a default can be entered, the Court must have jurisdiction over the party against whom default judgment is sought, which also means that party must have been effectively served with process. *Jacobs v. Tenney*, 316 F.Supp. 151, 165 (D.Del.1970); *Yox v. Durgan*, 298 F.Supp. 1365 (D.C.Tenn.1969); Wright &

Miller, Civil § 2682, p. 252. If this Court dismisses all of plaintiff's claims as to all named defendants, this Court will lack jurisdiction over the defaulting defendants.

Therefore, each and every one of plaintiff's motions for entry of default judgment should be denied.

### CONCLUSION

To summarize, this Court is prepared to order that:

(a) Claims 1–8 be dismissed sua sponte pursuant to Rule 12(b)(6), FRCP, for failure to state a claim in that the statute of limitations has run, and the Rule 12(b)(2), FRCP, motions to dismiss for lack of personal jurisdiction brought by those defendants as to whom the statute of limitations has not run, be granted;

(b) Claims 9–11 be dismissed sua sponte pursuant to Rule 12(b)(1), FRCP, for lack of subject matter jurisdiction;

(c) The Rule 12(b)(2), FRCP, motions of all the defendants specifically named in paragraph 104 of Claim 12 to dismiss for lack of personal jurisdiction be granted, and Claim 12 be dismissed sua sponte as to all the remaining defendants pursuant to Rule 19(b), FRCP, for failure to join indispensable parties;

(d) Claims 13 and 14 be dismissed sua sponte pursuant to Rule 12(b)(1), FRCP, for lack of subject matter jurisdiction;

(e) Claims 15 and 16 be dismissed sua sponte pursuant to Rule 12(b)(6), FRCP, for failure to state a claim in that those claims are barred by res judicata;

(f) Claims 17 and 18 be dismissed sua sponte pursuant to Rule 12(b)(1), FRCP, for lack of subject matter jurisdiction;

(g) All of plaintiff's motions for entry of default be denied.

---

**19.** A copy of that letter appears as Exhibit "S" to plaintiff's complaint, which comprises all of Volume I of the documents filed before this Court.

**20.** By this Court's calculations, there appear to be numerous other defendants who have failed to respond to the complaint. However, the precise number and identity of them is irrelevant in light of this Court's refusal to enter any defaults in this case.

ORAL ARGUMENT

It has been necessary for this Court to consider matters outside the pleadings in reaching its decision herein that certain claims should be dismissed for failure to state claims upon which relief may be granted. Since such dismissals are deemed to be summary judgments, the Court must afford plaintiff oral argument. In filing this opinion, this Court has indicated that it proposes to dismiss all of plaintiff's claims against all defendants but will defer the actual entry of its orders of dismissal and for judgments of dismissal until after oral argument is made by plaintiff to give plaintiff an opportunity to persuade the Court to the contrary of the views herein stated.

On the 16th day of March, 1981, from 9:30 A.M. until 11:30 A.M., plaintiff and plaintiff only (defendants need not appear) will be allowed to argue the following issues:

1. Whether there was any reason why this Court should not proceed sua sponte to treat the pending motions as if all the defendants had brought a single motion to dismiss the entire complaint upon appropriate grounds;

2. Whether or not Claims 1–8 should be dismissed as against all of the defendants except the Goleta Valley Chamber of Commerce and The Times-Weekend of San Mateo, pursuant to Rule 12(b)(6), FRCP, in that the statute of limitations had run against plaintiff since November of 1973; and

3. Whether or not Claims 15 and 16 should be dismissed as to all defendants pursuant to Rule 12(b)(6), FRCP, as to all the defendants on the grounds that those claims were barred by res judicata.